UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

HOLLY B.,

                    Plaintiff,

     v.

COMMISSIONER SOCIAL SECURITY
ADMINISTRATION,

                    Defendant.

Case No. 6:24-cv-00650-AR

OPINION AND ORDER

_____

**ARMISTEAD, United States Magistrate Judge**

In this judicial review of the Commissioner's final decision denying Social Security

benefits, Holly B. (last name omitted for privacy) challenges the Administrative Law Judge's

findings regarding her symptom testimony, the medical opinion evidence, and the lay witness

testimony. (Pl.'s Br. at 3-21.) As explained below, the Commissioner's decision is reversed, and

this case is remanded for an immediate calculation of benefits.[1]

_____

[1]    This court has jurisdiction under 42 U.S.C. §§ 405(g) and 1383(c)(3), and all parties have
consented to jurisdiction by magistrate judge under Federal Rule of Civil Procedure 73 and 28
U.S.C. § 636(c).

## PROCEDURAL BACKGROUND

Plaintiff applied for Title XVI Supplemental Security Income (SSI) in March 2019, alleging disability onset as of December 16, 2015. (Tr. 200-05.) Her application was denied, and plaintiff requested, and was granted, a hearing before an ALJ. (Tr. 106-09, 111-16, 32-59.) On April 16, 2021, the ALJ issued a decision finding plaintiff was not disabled. (Tr. 13-25.) Plaintiff requested review of the hearing decision, which the Appeals Council denied in September 2021. (Tr. 161-62, 1-6.) Plaintiff sought judicial review, and the parties stipulated to remand the matter to the agency. (Tr. 1838-41); *Briggs v. Comm'r Soc. Sec. Admin.*, 6:21-cv-01652-SI (D. Or. Dec. 12, 2022). In February 2023, the Appeals Council instructed the ALJ on remand to develop the record as to plaintiff's mental impairments with the assistance of a medical expert and to reconsider the medical source opinions and prior administrative medical findings. (Tr. 1842-45.)

A new hearing took place on October 16, 2023. (Tr. 1779-1809.) On December 19, 2023, the ALJ issued another unfavorable decision. (Tr. 1754-68.) Plaintiff now seeks review of that decision.

## ALJ'S DECISION

In denying plaintiff's application for SSI, the ALJ followed the five-step sequential evaluation process.[2] At step one, the ALJ determined that plaintiff had not engaged in substantial gainful activity (SGA) since the March 2019 application date. (Tr. 1756.) At step two, the ALJ

---

[2]    To determine a claimant's disability, the ALJ must apply a five-step evaluation. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). If the ALJ finds that a claimant is either disabled or not disabled at any step, the ALJ does not continue to the next step. *Id*.; *see also Parra v. Astrue*, 481 F.3d 742, 746-47 (9th Cir. 2007) (discussing the five-step evaluation in detail).

determined that plaintiff had the following severe impairments: lupus erythematosus, right

sensorineural hearing loss, and asthma. (Tr. 1757.) At step three, the ALJ determined that

plaintiff's impairments, singly or in combination, did not meet or medically equal the severity of

any listed impairment. (Tr. 1760.)

As for the ALJ's assessment of plaintiff's residual functional capacity (RFC), 20 C.F.R. §

404.1545, the ALJ determined that she had the ability to perform light work with these added

limitations:

> Occasionally lift and carry up to 20 pounds; frequently lift and carry 10 pounds or
> less; sit for six hours in an eight hour day; stand or walk in combination for no
> more than six hours in an eight hour day. The claimant can push and pull as much
> as she can lift and carry. She can occasionally climb ramps and stairs; must avoid
> ladders, ropes, and scaffolding; occasionally stoop, kneel, crouch, or crawl; never
> work at unprotected heights; and never be exposed to moving mechanical parts.
> She must avoid exposure to humidity and wetness; no exposure to dusts, odors,
> fumes and pulmonary irritants; avoid extremes of cold or heat; and no more than
> moderate noise. The claimant is limited to simple routine tasks and time off task,
> in addition to normal breaks, would be up to five percent scattered throughout a
> normal workday. She would miss work once every two months.

(Tr. 1760.) At step four, the ALJ determined that plaintiff cannot perform any past relevant work.

(Tr. 1766.) Considering her RFC, the ALJ found at step five that jobs existed in significant

numbers in the national economy that plaintiff could perform, including such representative

occupations as marker, office helper, and electronics worker. (Tr. 1767.)

## STANDARD OF REVIEW

The district court must affirm the Commissioner's decision if the Commissioner applied

proper legal standards and the findings are supported by substantial evidence in the record. 42

U.S.C. § 405(g); *Ford v. Saul*, 950 F.3d 1141, 1154 (9th Cir. 2020). Substantial evidence is "more

than a mere scintilla" and is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019) (quotation and citation omitted). To determine whether substantial evidence exists, the court must weigh all the evidence, whether it supports or detracts from the Commissioner's decision. *Garrison v. Colvin*, 759 F.3d 995, 1009 (9th Cir. 2014).

## DISCUSSION

**A.    *Medical Opinion Evidence***

Plaintiff challenges the ALJ's consideration of the medical opinions of Mary Derlacki, FNP, Amy Lovett, PA-C, and Sergiy Barsukov, Psy.D. The regulations require ALJs to evaluate the supportability and consistency of a medical opinion when assessing its persuasiveness. 20 C.F.R. § 404.1520c. ALJs must "articulate . . . how persuasive [they] find all of the medical opinions" and "explain how [they] considered the supportability and consistency factors." *Woods v. Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022) (quoting 20 C.F.R. § 404.1520c(b)(2)). Supportability is determined by assessing whether the medical source provides explanations and objective medical evidence to support their opinion. 20 C.F.R. § 404.1520c(c)(1). Consistency is determined by evaluating how consistent the opinion is with evidence from other medical and nonmedical sources in the record. 20 C.F.R. § 404.1520c(c)(2).

**1.    Mary Derlacki, FNP**

On October 26, 2020, Mary Derlacki, FNP, submitted a treating source statement in support of plaintiff's disability claim. (Tr. 1622-26.) The ALJ found Derlacki's opinion unpersuasive because it was inconsistent with treatment notes showing "normal gait and full motor strength when [plaintiff] is not symptomatic." (Tr. 1764.) And the ALJ found that there is

no evidence of any lupus flares that would result in the restrictive limitations cited by Derlacki. (Tr. 1764.) As to plaintiff's likely absences from work, the ALJ found that Derlacki's opinion contradicted plaintiff's testimony that she called in to work 10 to 15 times since the hearing in January 2021, which the ALJ estimated to be less than once per month. (Tr. 1764-65.) The ALJ's conclusions are not supported by substantial evidence.

Derlacki's opinion stated that plaintiff would need multiple 20- to 30-minute unscheduled breaks throughout the day to relieve pain and rest her hands and left knee. (Tr. 1623-25.) Derlacki, who has been treating plaintiff since 2003 and sees her every four to eight weeks, described plaintiff having swollen joints in hands and wrists, fatigue, decreased mental acuity, lupus flares, a swollen left knee with weakness on use, low complement C3, positive rheumatoid factor, and a positive lupus anticoagulant. (Tr. 1622-23.) Contrary to the ALJ's conclusion that there is no evidence of lupus flares supporting Derlacki's assessed restrictions, ample evidence in the record supports them, including several examinations demonstrating tenderness and swelling in the knees, elbows, wrists, hands, and feet, and decreased range of motion in her hips. (*See, e.g.*, Tr. 309, 316, 611, 613, 616, 1742, 2198.) The record also shows active synovitis in both wrists and decreased range of motion in the left shoulder. (Tr. 613, 611, 1299, 1294, 1684.) Her supraspinatus, Neer's, and Hawkins testing was positive in 2019. (Tr. 1294.) In the same year, plaintiff exhibited a grip strength of 3/5 in her right hand and experienced a loss of full extension in her left knee. (Tr. 462, 611.) And Derlacki's own treatment notes reflect frequent discussions of plaintiff's joint pain and swelling, elevated platelet count, Raynaud's symptoms and fatigue. (*See, e.g.*, Tr. 614, 616, 629, 1685, 1689, 2197, 2199.)

The ALJ also pointed to plaintiff's testimony that she has called into work "10 to 15 times in the two plus years since the last hearing" as evidence that undermines Derlacki's opinion. (Tr. 1764.) Yet the ALJ overlooked the specific circumstances of her job, which permitted her to work only three days per week and allowed her to select her shifts. (Pl. Br. at 6.) At plaintiff's 2023 administrative hearing, she explained that her employer considers the severity of her symptoms when assigning her job station. (Tr. 1784.) Plaintiff's supervisor also submitted a statement explaining that plaintiff did not regularly report to work as scheduled, has fewer or easier duties, and takes more breaks than other employees. (Tr. 2003.) The ALJ's determination is not supported by substantial evidence when viewed against plaintiff's records, including medical records consistent with Derlacki's opinion and employment records showing notable accommodations for her impairments. (Tr. 2003-05, 614, 616, 629, 1685, 1689, 2197, 2199.) As plaintiff contends, the ALJ impermissibly cherry-picked treatment notes to highlight periods when she was not symptomatic. *See* 42 U.S.C. § 423(d)(5)(B) (requiring an ALJ base the decision on "all the evidence available in the [record].")

In sum, the ALJ's rationale for finding Derlacki's opinion unpersuasive is not supported by substantial evidence and the ALJ has erred. *See Ghanim v. Colvin*, 763 F.3d 1154, 1160–61 (9th Cir. 2014); *Garrison*, 759 F.3d at 1012–13 ("[A]n ALJ errs when he rejects a medical opinion or assigns it little weight while doing nothing more than ignoring it, asserting without explanation that another medical opinion is more persuasive, or criticizing it with boilerplate language that fails to offer a substantive basis for his conclusion.").

2.      **Amy Lovett, PA-C**

In September 2023, Amy Lovett, PA-C, submitted a treating-source statement in support of plaintiff's disability claim. (Tr. 2275-77.) Lovett assessed plaintiff as having "difficulty sustaining a simple routine without special accommodations or absences. Her [lupus] results in unpredictable flares of pain, fatigue, [and] difficulty concentrating. She would almost certainly exceed two absences [per] month." (Tr. 2276.) Lovett also observed plaintiff's psychological symptoms as "depressed mood, panic attacks, inattention, anxiety, [and] difficulty concentrating." (Tr. 2276.)

The ALJ was unpersuaded by Lovett's opinion because "it is not consistent with her own recent treatment notes wherein a PHQ[-]9 screening indicates only mild depression and noncompliance with medication is noted." (Tr. 1765, citing Tr. 2270, 2273.) The ALJ also mentioned that Lovett's opinion was inconsistent with plaintiff's testimony that she was only absent from work 10 to 15 times since the January 2021 hearing.[3] (Tr. 1765.)

Yet the ALJ cited one PHQ-9 score to discount Lovett's opinion even though the medical expert remarked that a PHQ-9 screening provides merely a "picture of what is happening at that point in time." (Tr. 1762.) And the ALJ found that Lovett's treatment notes only indicate mild depression without considering the "full chronological record" to determine plaintiff's functionality. *See Ghanim*, 763 F.3d at 1164. When so considered, the record reflects that, on January 30, 2019, plaintiff scored an 18 (which indicates severe depression) on the PHQ-9

---

[3]      Plaintiff again asserts that the ALJ erred by relying on plaintiff's part-time accommodated work to undermine PA Lovett's medical opinion. This court already determined that the ALJ erred by relying on this reason to find  Derlacki's medical opinion unpersuasive, and that logic equally applies here.

assessment, among other PHQ-9 scores indicating depression. (Tr. 478, 484-85, 478, 2051, 2270-71.) And in 2023, Lovett diagnosed plaintiff with severe depression and noted "supporting her mental health and helping to address her depression is the most important thing at this time." (Tr. 2016; *see also* Tr. 2255, 2257.) Indeed, many of plaintiff's treatment providers observed her mental health struggles and echo Lovett's opinion that plaintiff would have difficulty sustaining a simple routine. (*See* Tr. 320, 1290, 1284, 620, 2030, 823, 833, 841, 856, 671, 705, 738, 1742, 700, 714, 758-59.) In short, the ALJ's determination that Lovett's opinion is unsupported by treatment notes and inconsistent with other record evidence is not backed by substantial evidence. The ALJ erred in finding Lovett's medical opinion unpersuasive.

### 3.    Sergiy Barsukov, Psy.D.

Dr. Barsukov, a state agency psychological examiner, submitted a medical evaluation noting that plaintiff can only occasionally interact with the public, and can understand and remember simple, routine, one- to two-step instructions. (Tr. 97.) He also opined that plaintiff's ability to perform activities within a schedule, maintain regular attendance, and be punctual was moderately limited. (Tr. 96.) The ALJ found Dr. Barsukov's opinion persuasive only "to the extent that [plaintiff] is limited to no more than simple tasks because the record does not substantiate a finding that [her] mental impairments are severe and result in moderate limitations in any area of functioning as she has stopped going to therapy and the most recent mental status examinations indicate normal affect[.]" (Tr. 1766.) The ALJ also noted that plaintiff's "most recent" mental status examinations demonstrate that she has no pressured speech, and some difficulty with word finding and word choice consistent with a limitation to simple tasks. (Tr. 1766.)

Page 8 – OPINION AND ORDER
*Holly B. v. Comm'r Soc. Sec. Admin.*, 6:24-cv-00650-AR

Those findings by the ALJ are unsupported by substantial evidence. To begin with, when discussing Dr. Barsukov's opinion and plaintiff's mental health status examinations, the ALJ focused on isolated instances of improvement or short periods of time when plaintiff's mental health remained stable, while only briefly acknowledging other times of deteriorating mental health. The longitudinal record shows that plaintiff's mental health waxed and waned between 2017 and 2023, and that many of her symptoms persisted despite treatment. (Tr. 320, 620, 2030, 552, 697, 702, 705, 714, 1563, 747, 486, 1733, 1734.) The Ninth Circuit has recognized that in the context of mental health impairments "[c]ycles of improvement and debilitating symptoms are a common occurrence" and that ALJ may not pick out "isolated instances of improvement" to discredit a claimant. *Garrison*, 759 F.3d at 1017; *see also Attmore v. Colvin*, 827 F.3d 872, 878 (9th Cir. 2016) ("It is the nature of bipolar disorder that symptoms wax and wane over time" and the record did not show "sustained improvement.").

Next, the ALJ's discounting of Dr. Barsukov's medical opinion because she stopped attending therapy is not supported by substantial evidence. At the 2023 administrative hearing, plaintiff explained that she had seen therapists previously, but that they moved positions frequently and that it was "really hard on [her]" when they left. (Tr. 1792.) She also explained that she had been waitlisted for a new therapist. (Tr. 1792-93.) The ALJ should have considered plaintiff's reasons as to why she stopped therapy. *See* Soc. Sec. Ruling ("SSR") 16-3p, 2017 WL 5180304, at *9 (S.S.A. Oct. 25, 2017) ("We will not find an individual's symptoms inconsistent with the evidence in the record on this basis without considering possible reasons he or she may not comply with treatment or seek treatment consistent with the degree of his or her complaints."). Although plaintiff may have benefited from continued therapy during those

periods, the court cannot fault plaintiff for a less than stellar history of mental health treatment given the difficulties with having consistent mental health treatment providers. *Cf. Nguyen v. Chater*, 100 F.3d 1462, 1465 (9th Cir. 1996) ("it is a questionable practice to chastise one with a mental impairment for the exercise of poor judgment in seeking rehabilitation") (quoting *Blankenship v. Bowen*, 874 F.2d 1116, 1124 (6th Cir. 1989)).).

Ultimately, it is difficult to reconcile how Dr. Barsukov's medical opinion describing plaintiff's ongoing mental health struggles are inconsistent with her numerous treatment records, and the ALJ's other reasons for finding this medical opinion partially persuasive are not supported by substantial evidence. Because substantial evidence does not support the ALJ's findings as to supportability and consistency, the ALJ erred in assessing Dr. Barsukov's medical opinion.

**B.    *Subjective Symptom Testimony***

Determining the credibility of a claimant's symptom testimony requires the ALJ to undertake a two-step process of analysis. *Trevizo v. Berryhill*, 871 F.3d 664, 678 (9th Cir. 2017); 20 C.F.R. § 404.1529. At the first step, the claimant must produce objective medical evidence of an underlying impairment that could reasonably be expected to produce the alleged symptoms. *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1102 (9th Cir. 2014); *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008). At the second step, if there is no affirmative evidence of malingering, the ALJ must provide specific, clear and convincing reasons for discounting the claimant's testimony. *Brown-Hunter v. Colvin*, 806 F.3d 487, 488-89 (9th Cir. 2015); 20 C.F.R. § 404.1529. The specific, clear and convincing standard is "the most demanding required in Social Security cases" and is "not an easy requirement to meet."

*Garrison*, 759 F.3d at 1015*; Trevizo*, 871 F.3d at 678–79. The "clear and convincing" standard

requires an ALJ to "show [their] work" but, ultimately, the question is not whether ALJ's

rationale convinces the court, but whether the ALJ's rationale "is clear enough that it has the

power to convince." *Smartt v. Kijakazi*, 53 F.4th 489, 499 (9th Cir. 2022).

      Here, the ALJ concluded that plaintiff "alleges disabling impairments but medical

findings do not support the extent of limitation[s] alleged[.]" (Tr. 1763.) But because no other

identifiable reason was articulated, the ALJ did not provide clear and convincing reasons

supported by substantial evidence in the record to reject plaintiff's symptom testimony. The ALJ

is not entitled to rely on the lack of "objective" evidence to reject a claimant's subjective

symptom testimony. *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) ("[T]he Commissioner

may not discredit the claimant's testimony as to the severity of symptoms merely because they

are unsupported by objective medical evidence."); *Berry v. Astrue*, 622 F.3d 1228, 1234 (9th Cir.

2010) ("Once the claimant produces medical evidence of an underlying impairment, the

Commissioner may not discredit the claimant's testimony as to subjective symptoms merely

because they are unsupported by objective evidence."). Rather, the ALJ is required to

> consider both the medical evidence and "descriptions and observations of [the
> claimant's] limitations from [the claimant's] impairment(s), including limitations
> that result from [the claimant's] symptoms, such as pain, provided by" the
> claimant, family, friends, and other people. [20 C.F.R.] § 416.945(a)(3). The RFC
> assessment must "[c]ontain a thorough discussion and analysis of the objective
> medical and other evidence, including the individual's complaints of pain and
> other symptoms and the adjudicator's personal observations, if appropriate." SSR
> 96–8p, 61 Fed. Reg. at 34478 (emphasis added). In other words, the ALJ must
> take "the claimant's subjective experiences of pain" into account when
> determining the RFC.

*Laborin v. Berryhill*, 867 F.3d 1151, 1153–54 (9th Cir. 2017).

Although the ALJ provided a summary of medical evidence he found to undermine plaintiff's claims of impairment, he neither identified the testimony he found not credible nor specified what evidence undermined plaintiff's complaints. *See Brown-Hunter*, 806 F.3d at 494; *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) ("General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints."); *Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001) ("[T]he ALJ must specifically identify the testimony she or he finds not to be credible and must explain what evidence undermines the testimony.").

As for plaintiff's main impairment of lupus, the ALJ cited instances where she "reported or exhibited lupus-related symptoms, including fatigue, swelling, joint pain, decreased range of motion, abdominal pain, chest pain at different times." (Tr. 1763.) To undermine these medical findings, the ALJ cited instances where "[plaintiff] has presented with some gait abnormalities due to knee pain but she has far more often presented with a normal gait." (Tr. 1763.) And though the ALJ is correct that plaintiff's lupus was documented in medical appointments as "quiet[,]" it is a mischaracterization of her symptoms to say that she had "no complications from April 2018 through June 2023[.]" (Tr. 1763, citing Tr. 525, 607-09, 617-19, 629, 1366, 1684, 1688, ) At plaintiff's second hearing, she did not confirm that her lupus was quiet, as she described symptoms that she still experiences stemming from her lupus flare ups. (*See* Tr. 1786, 1789.)

Furthermore, any reports of improvement with treatment—use of Benlysta or Plaquenil— are modest at best. Plaintiff's lupus continues to fatigue her and cause pain joint pain, which in turn impedes caring for herself and her child. (*See* Tr. 1787, 1688 "She took Benlysta off and on

for about 9 months and it didn't give her any overarching benefit."; *see also* Tr. 1742 "She has been on Plaquenil for decades. Discontinued it and then we restarted it. While it helps normalize some of her serologies it has not helped with the symptomology of Raynaud's, pleuropericarditis, fatigue, or sicca.") Thus, the overall diagnostic picture reveals waxing and waning lupus symptoms with generally low levels of overall functioning. *Ghanim*, 763 F.3d at 1164 (explaining that an ALJ may not cherry-pick isolated instances of favorable symptoms when the record reflects longstanding disability).

The ALJ's analysis of plaintiff's subjective symptom testimony is brief, mischaracterized, and unsupported by the record, including a lack of support for his contentions. Therefore, the ALJ failed to provide a clear and convincing reason, supported by substantial evidence, for affording less weight to plaintiff's symptom testimony.[4]

In summary, the ALJ's conclusion as to the medical opinions and plaintiff's symptom testimony are not based on substantial evidence and supported by reasonable references drawn from the record.

---

[4]    The Commissioner suggests that the ALJ provided two more reasons that discredit plaintiff's subjective symptom testimony: her part-time work activity and her activities of daily living. (*See* Def. Br. at 15-18.) However, the ALJ did not meaningful discuss how those activities undermine plaintiff's allegations. The ALJ merely points out that plaintiff has a part-time job but does not engage in a discussion of how it cuts against her testimony. (*See* Tr. 1761.) The same goes for the Commissioner's contention that the ALJ discussed her activities of daily living and used those to undermine her testimony. Again, the ALJ did not meaningful address plaintiff's activities of daily living. The ALJ listed them out absent any logical paths of reason. "Although the ALJ's analysis need not be extensive, the ALJ must provide some reasoning in order for [the court] to meaningfully determine whether the ALJ's conclusions were supported by substantial evidence." *Brown-Hunter*, 806 F.3d at 495. The court cannot "speculate as to the grounds for the ALJ's conclusions." *Id.*

Page 13 – OPINION AND ORDER
*Holly B. v. Comm'r Soc. Sec. Admin.*, 6:24-cv-00650-AR

**D.    *Remand***

A reviewing court may remand for further proceedings or for a finding of disability and an award of benefits. *See, e.g.*, *Burrell v. Colvin*, 775 F.3d 1133, 1141 (9th Cir. 2014). Whether an action is remanded for an award of benefits or for further proceedings depends on the likely utility of additional proceedings. *Harman v. Apfel*, 211 F.3d 1172, 1179 (9th Cir. 2000). In determining whether an award of benefits is warranted, the court conducts the "three-part credit-as-true" analysis. *Garrison*, 759 F.3d at 1020. Under that analysis, the court considers whether: (1) the ALJ has failed to provide legally sufficient reasons for rejecting evidence; (2) the record has been fully developed and further proceedings would serve no useful purpose; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand. *Dominguez v. Colvin*, 808 F.3d 403, 407 (9th Cir. 2015). Even if all the requisites are met, however, the court may still remand for further proceedings "when the record as a whole creates serious doubt as to whether the claimant is, in fact, disabled." *Garrison*, 759 F.3d at 1021.

Plaintiff satisfies all three parts of the credit-as-true-as-true analysis. (Pl. Repl. Br. at 4-6.) As explained above, the ALJ failed to provide legally sufficient reasons to reject plaintiff's testimony and the medical opinions of Derlacki and Lovett, and in finding Dr. Barsukov's opinion partially persuasive. Both Derlacki and Lovett opined that plaintiff's impairments would cause her to exceed the acceptable number of absences from work per month. (Tr. 1626, 2276.) The vocational expert testified that if plaintiff was absent more than two days per month, that would eliminate competitive employment. (Tr. 1807.) If that testimony is credited as true, the ALJ would be required to find plaintiff disabled on remand. Plaintiff testified that in the relevant

time period, she experienced severe symptoms related to her chronic illness of lupus, which includes swollen joints throughout her body, extreme fatigue and exhaustion, and a lack of concentration due to pain. (Tr. 1786-87, 257-63.) Those limitations and subsequent absences from work were echoed by supervisors and her friend.[5] (*See* Tr. 248-51, 2003, 2005.)

The Commissioner contends that the ALJ's decision was legally sufficient and casts doubt  on plaintiff's disability. (Def. Br. at 19.) But the Commissioner fails to "point to anything in the record that the ALJ overlooked and explain how that evidence casts into serious doubt [plaintiff's] claim to be disabled[.]" *Burrell v. Colvin*, 775 F.3d 1133, 1141 (9th Cir. 2014) (citing *Garrison v. Colvin*, 759 F.3d 995, 1022 (9th Cir. 2014)). Finally, the Commissioner asserts that there are conflicts in the record preventing a remand for an award of benefits but fails to identify them. (*See* Def. Br. at 19.) Therefore, a remand for further administrative proceedings would serve no useful purpose.

Moreover, the credit-as-true rule is a "prophylactic measure" designed to motivate the Commissioner to ensure that the record will be carefully assessed and to justify "equitable concerns" about the length of time which has elapsed since a claimant has filed their application. *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1100 (9th Cir. 2014) (internal citations omitted). Here, Plaintiff filed for benefits in 2019, the ALJ issued an unfavorable decision in

---

[5]     Plaintiff cites the old standard regarding an ALJs evaluation of lay witness testimony to argue that he erred in his evaluation of R. West, plaintiff's friend. (Pl. Br. at 19.) However, the Ninth Circuit has recently concluded in *Hudnall v. Dudek*, that its "'germane reasons' precedent no longer applies to claims filed on or after March 27, 2017, and in considering such claims, ALJs need not explain their reasons for discounting evidence from nonmedical sources." 130 F.4th 668, 671 (9th Cir. 2025). In other words, an ALJ may reject testimony from a lay witness "without explanation." *Id.* Therefore, the ALJ did not err in his evaluation because he was not required to explain why he rejected the statements of R. West.

2021, and after seeking judicial review in 2021, the parties stipulated to remand the matter to the agency. Another administrative hearing was held, and another unfavorable decision was issued by the ALJ in 2023. Despite these attempts, the ALJ's decisions continue to be insufficiently supported, causing significant delay. Considering this delay and the harmful errors by the ALJ over multiple decisions, the court sees little value in providing the ALJ a "mulligan" here. *Garrison*, 759 F.3d at 1021; *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004) ("Allowing the Commissioner to decide the issue again would create an unfair 'heads we win; tails, let's play again' system of disability benefits adjudication.").

Finally, reviewing the whole record creates no doubt that plaintiff is, in fact, disabled. *Garrison*, 759 F.3d at 1022–23. The record reflects that plaintiff has disabling physical and mental limitations due to lupus, depression, and anxiety. In sum, the court concludes that plaintiff satisfies the credit as true test, has no serious doubt that plaintiff is disabled, and that remanding this case for an immediate calculation of benefits is appropriate.

## CONCLUSION

For the above reasons, the court REVERSES the Commissioner's decision and REMANDS for an immediate calculation of benefits.

DATED: May 14, 2025.

_____
JEFF ARMISTEAD
United States Magistrate Judge